# WEINSTEIN, KAPLAN & COHEN, P.C.

COUNSELORS AT LAW
1325 FRANKLIN AVENUE
SUITE 210
GARDEN CITY, NEW YORK 11530
TELEPHONE (516) 877-2525
TELECOPIER (516) 877-7760
WWW.WKC-LAW.COM

ALEXANDER MARK KAPLAN*†
ROBERT N. COHEN**
ERIKA L. CONTI
DANIELE D. DE VOE

FREDERICK C. SUNG

*NY AND FL BAR
**NY AND CA BAR
†MEMBER OF NY ASSOCIATON OF COLLABORATIVE PROFESSIONALS

MARTIN WEINSTEIN
(RETIRED)

September 21, 2017

**\*\*\*VIA ECF**

Honorable Arlene R. Lindsay
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

    Re:    <u>Suyapa Baca and Arlex Escobar, et al v. 24 Hr Laundromat and Stephen Gresovetti</u>
           Case No. 15-cv-06707-JFB-ARL

Honorable Madam:

    Please be advised that we represent SNG Laundromat Corporation and Stephen Gregoretti with regard to the above-referenced matter and submit this letter in accordance with your Honor's request for a status update regarding settlement negotiations. While we did consent to plaintiffs' counsel's letter being filed, as was indicated to plaintiffs' with said consent, the letter that they prepared was very kind regarding the actions that plaintiffs' firm has taken since Judge Bianco vacated the default herein.

    More particularly, within five days of Judge Bianco issuing the order denying plaintiff's Motion for Default and granting defendants' Motion to Vacate, plaintiffs' attorneys prepared a frivolous Summons and Complaint in plaintiffs' name against my clients wherein they are also complaining about defendants payroll practices, however, this time proffering various claims against my client for its alleged failure to withhold payroll taxes, despite nearly forty years of precedent in the EDNY, SDNY, WDNY and New York State Courts unequivocally holding that no such private right of action exists. *See* <u>*Baca and Escobar v. SNG Laundromat d/b/a 24 Hr Laundromat and Gregoretti*</u>, Nass. Co. Sup. Ct. Index No. 606710/2017. While we had prepared the appropriate motion to dismiss and for sanctions, we decided to wait to file the same to give settlement of this matter a fair chance as we knew that settlement would be highly unlikely if a sanctions motion was pending against plaintiffs and their attorneys.

## WEINSTEIN, KAPLAN & COHEN, P.C.

On September 14, 2017, the undersigned and Stephen Gregoretti arrived at the EDNY courthouse for the in-person settlement conference at around 2:00 P.M. We entered Room 228 (which formerly was the attorney lounge) and found an older man who I had never met sitting at one of the tables. As I was unsure whether he was there for the conference or was simply an attorney trying to get some work done, I asked the man whether he was here on our case, to which he responded that he was and introduced himself as Neil Frank, Esq. I then asked the man if his clients were coming as I was of the (mistaken) belief that the in-person settlement conference required clients to be present. Mr. Frank responded that his clients were not coming as he was unaware that clients needed to be present, but that he relied upon his associate, Anthony Merrill, Esq. to schedule this appearance and that his associate would be along in a moment. I then advised Mr. Frank that my client and I would wait outside until his associate arrived.

Outside, I called my office to have them email me a copy of your Honor's Order to verify whether clients were required to be present and, when I discovered my mistake, I went back into Room 228 to advise Mr. Frank that I was mistaken. In response, he stated in a completely serious and curt tone, "Don't worry, I already knew that you were wrong as I called my associate". I went back out to where my client was sitting and advised that I was not too overly optimistic about how effective settlement negotiations would be based upon Mr. Frank's last comment to me.

When Mr. Merrill arrived, my client and I went into Room 228 and before I had even completely sat down, Mr. Frank pulled out the Nassau County Complaint and asked if I had received a copy of the same. I advised him that I had and that we intended to make a motion to dismiss and for sanctions if we were unable to resolve this matter because more than thirty years of precedent has held that his clients had no standing to sue my clients for allegedly failing to withhold payroll taxes. In response, Mr. Frank advised me that other attorneys had previously made such a claim when he had previously commenced such an action, but let's see how I would do with that. *See Springer v. U.S. Bank National Ass'n*, 2015 WL 9462083, at *9 (SDNY 2015); *Le Bouteiller v. Bank of New York Mellon*, 2015 WL 5334269, at *8 (SDNY 2015) **(Holding that plaintiff lacked standing to assert violations of the IRC as no private right of action exists therein)**; *Ferro v. Metropolitan Center for Mental Health*, 2014 WL 1265919 (SDNY 2014) **(Held: No private right of action exists for an employee to sue an employer for allegedly failing to make FICA contributions as FICA was enacted for the benefit of the federal government, not the employee)**; *Reynolds v. DeSilva*, 2010 WL 743510, at *7-8 (SDNY 2010), abrogated on other grounds by *Katz v. Cellco P'Ship*, 794 F.3d 341 (2d Cir. 2015) **(Dismissing plaintiff's complaint for failure to state a claim upon which relief may be granted as there is no private right to sue an employer for failure to withhold and remit payroll taxes)**; *Seabury v. City of New York*, WL 1367396, at *5 (EDNY 2006) **(Held: a private citizen has no authority to enforce the provisions of the tax code wherein that authority solely rested with the Secretary of the Treasury and the Commissioner of the Internal Revenue Service)**; *White v. White Rose Food*, 62 F.Supp.2d 878, 887 (EDNY 1999) **(Held: Federal and state payroll withholding statutes are revenue-producing in nature and, as such, do not create a special benefit to the individual employees to give rise to a private right of action)**; *Spilky v. Helphand*, 1993 WL 159944, *2-4 (SDNY 1993) **(Sua**

WEINSTEIN, KAPLAN & COHEN, P.C.

*sponte dismissing an employee's claim against his former employer alleging a failure to withhold payroll taxes based upon lack of subject matter jurisdiction as such claim was "so patently without merit" because no private right of action exists to permit an employee to enforce the payroll tax laws); Deleu v. Scaife, 775 F.Supp. 712, 716-718 (SDNY 1991) (Court found no basis for implying a private remedy under New York State or federal law that would permit an employee to sue an employer for an alleged failure to withhold payroll taxes); DiGiovanni v. City of Rochester, 680 F.Supp 80, 83 (WDNY 1988) (Held: Employees possess no private right of action to sue an employer for failure to withhold payroll taxes because, if the federal income tax statues are intended to benefit anyone, it is the federal government to whom the withheld tax is to be remitted); see also Brian Hoxie's Painting Co. v. Cato-Meridian Cent. School Dist., 76 N.Y.2d 207, 211 (1990); Sheehy v. Big Flats Community Day, Inc., 73 N.Y.2d 629, 634 (1989); Stoganovic v. Dinolfo, 92 A.D.2d 729 (4th Dept. 1983).*

    Mr. Frank then demanded $1,000,000.00 which was clearly absurd as the prior demand before Judge Bianco's June 5, 2017 decision was $150,000.00. In response thereto, I advised Mr. Frank that we were prepared to dismiss our counterclaims in this action and to not file a motion for sanctions in the Nassau County action if he voluntarily discontinued both actions with prejudice. He responded with "Rejected!" and then said something to the effect of "you're a real piece of work, aren't you?" and "You're a real pipsqueak". In retort, I admittedly told Mr. Frank that I hoped that he had a very good malpractice policy because commencing an action which he admittedly knows has no merit and potentially subjecting his clients to sanctions was textbook malpractice. I then told him that we obviously had nothing to talk about and got up to leave. He next called me a "jerk" and a "cunt". I admittedly responded with "Are you fucking kidding me with this? How do you think that it is appropriate to talk to someone like this?"

    I continued to leave, but then turned in the doorway to ensure that my client was behind me when I saw Neil Frank coming after me, shouting at me and waiving his finger in my face, nearly striking my nose. He then proceeded to yell in my face and call me a "fucking cunt" and other obscenities. In response, I pushed his finger out of my face and admittedly called him an asshole and told him to keep his finger out of my face. He then pressed his entire body up against mine and had his face right up to my face, his gut pressed against my stomach and his chest pressed against my chest, continuing to shout at me. While I do not attribute Mr. Frank for knowing this as it is still very early on, however, he was not only pushing a woman, he was pushing his chest and belly into the stomach of a pregnant woman. So disgusted and bothered by him pressing his body against mine and, quite frankly, in shock that a male attorney would do something like this to a female attorney, I pushed him off of my body. Neil then stated "You gonna push me, you cunt, you gonna push me, you fucking cunt?" In response, I advised him that I certainly was going to push him off of me if he tried to press his body against mine because that is disgusting and I do not want his belly touching me. My client jumped in between us at this time and advised

# WEINSTEIN, KAPLAN & COHEN, P.C.

Neil that he was going to engage all means possible to protect me if Neil tried to touch me again. Neil then got into my client's face and started taunting him by repeating "You gonna hit me tough guy, go ahead, hit me! I will sue you for $2,000,000.00. You gonna hit me, tough guy, go ahead!" At this point, Anthony Merrill spoke for the first time and advised my client that he did not want to hit someone in a federal courthouse. I also advised my client that it was time to leave and I grabbed his arm, leading him to the elevators. I also admittedly stated to Mr. Frank as we were leaving that sixty-three years practicing law was long enough to know that such behavior was completely inappropriate and that, perhaps, it was time for him to retire if he could not behave like an attorney should.

     My client, my husband and my partner all wanted me to go to the police to file a complaint for assault and battery in addition to filing a grievance with the bar association. I am still in shock a week later as, never in my wildest dreams, did I ever imagine something like this happening to me as I have never been in a fight in my life. However, I genuinely feared that Neil Frank was actually going to hit me. One of my associates has done some research on Neil Frank, Esq. and has learned that several of his former associates have reported online that he is abusive, has a short temper and practices law by yelling at and hanging up on people. Thus, I guess this is just par for the course in how he practices. Yet, I am astonished that he is permitted to continue to practice law if it is his style to physically and verbally abuse his adversaries. I really do not know where we go from here as I now have to bring a body guard to every appearance in this case to ensure that I am not assaulted again.

     Thank you in advance for your courtesy and cooperation in this matter.

Very truly yours,

WEINSTEIN, KAPLAN & COHEN, P.C.

By: _____
DANIELE D. DE VOE